**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlos M. Rondon Clavo, | No. CV-24-08025-PCT-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Midwestern University, Kingman Regional Medical Center, Gregory Nelcamp, Shane Sergent, Adam Dawson, and Justina Truong, | |
| Defendants. | |

Plaintiff Carlos M. Rondon Clavo was a resident at Kingman Regional Medical Center ("KRMC") before he was terminated for cause. He filed suit against both KRMC and defendant Midwestern University, the private educational institution that sponsored the residency program, for discrimination and breach of contract. After Dr. Clavo amended his complaint, Midwestern moved to dismiss the breach-of-contract claim against it. Its motion to dismiss is granted.

I.    **Background**

Dr. Clavo obtained his medical degree in Venezuela before immigrating to the United States. (Doc. 53 at 5.) After completing a series of post-doctoral fellowships, he matched with the Emergency Medicine residency program at KRMC, a hospital in northern Arizona. (Doc. 53 at 5.) That program is sponsored by Midwestern, a private university accredited by the Accreditation Council for Graduate Medical Education ("ACGME"). (Doc. 53 at 5.) As a sponsoring institution, Midwestern is bound by ACGME's policies and regulations, including disciplinary procedures and due process requirements. (Doc. 53

at 8.) ACGME-accredited residency programs receive funding from the Centers for Medicare and Medicaid Services to cover the stipends and costs of training residents. (Doc. 53 at 9.)

According to the amended complaint, Dr. Clavo's first year of the three-year program was governed by an express contract with Midwestern. (Doc. 53 at 6.) But in his second year, the terms of his residency were governed by a contract between him and KRMC. (Doc. 53 at 6.)

During his second year in October 2021, Dr. Clavo accidentally placed a catheter incorrectly during a central line procedure but "acted promptly to prevent injury to the patient." (Doc. 53 at 11–12.) Although he took full responsibility for the mistake, KRMC placed Dr. Clavo on "remediation," a disciplinary sanction with potential to escalate, requiring him to perform additional procedures under the supervision of defendant Dr. Justina Truong. (Doc. 53 at 4, 12.) During that first remediation period, Dr. Clavo disagreed with an attending physician who reported him for insubordination, resulting in a second remediation plan issued in December 2021. (Doc. 53 at 13–14.) The second remediation plan required Dr. Clavo "discuss ALL patient care decisions . . . with an attending physician on the service" until April 1, 2022, and warned that he could be removed from active clinical duties if it appeared at any time that patient safety was compromised. (Doc. 53 at 130.)

Nonetheless, in January 2022 Dr. Clavo administered ketamine as an anesthetic to a patient with a leg fracture before discussing the treatment with the attending physician. (Doc. 53 at 15.) Dr. Clavo argued the attending physician was engaged with other patients and "time was of the essence." (Doc. 53 at 15.)

KRMC terminated Dr. Clavo in a written letter dated February 4, 2022. (Doc. 53 at 134.) It noted Dr. Clavo had "performed another unsupervised procedure without the attending physician's consent while in active remediation for a similar event" and the governing employment agreement allowed for immediate termination if a resident's act, omission, or pattern of conduct poses a danger to patient welfare. (Doc. 53 at 134.)

Dr. Clavo requested an appeal hearing, which Midwestern administrated in accordance with a written "Academic and Disciplinary Action 'Due Process' Policy." (Doc. 53 at 19, 27.) The appeal committee voted to terminate Dr. Clavo from the residency program on May 20, 2022. (Doc. 53 at 19.)

Nearly nineteen months later, Dr. Clavo filed a complaint in the U.S. District Court for the Northern District of Illinois, which was later transferred to the District of Arizona. (Doc. 18.) Once in Arizona, Dr. Clavo amended his complaint and alleged various counts of employment discrimination, due process violations, and breach of contract. (Doc. 38.) The court dismissed these counts and granted limited leave to amend the employment and contractual discrimination counts and his breach of contract claim as to Midwestern. Specifically as to that claim, the court noted "the complaint does not contain allegations plausibly establishing the existence of a valid and enforceable contract between Dr. Clavo and Midwestern" but granted leave to amend if he could "point to another valid agreement governing his relationship with Midwestern." (Doc. 52 at 11.) Dr. Clavo amended his complaint to assert only the claims the court permitted (Doc. 53) and Midwestern moved to dismiss the sole remaining claim against it (for breach of contract). (Doc. 58.)

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64."

## III. Discussion

Dr. Clavo argues he had an implied contract with Midwestern whereby Midwestern

1   would "advance" residents "to the next level" if they "demonstrated academic and clinical

2   fitness," "foster a safe environment to allow critical thinking and communication skills that

3   stimulate personal growth and engender professional development," and adhere to the Due

4   Process Policy. (Doc. 53 at 23–24.) Dr. Clavo is mistaken.

5          Like explicit contracts, implied-in-fact contracts require offer, acceptance,

6   consideration, and mutual intent of the parties to be enforceable. *Griffey v. Magellan*

7   *Health Inc.*, 562 F. Supp. 3d 34, 50 (D. Ariz. 2021). As best as this court can understand,

8   Dr. Clavo argues the parties implicitly contracted "as a result of his enrollment with

9   Midwestern." (Doc. 59 at 5.) He insinuates the terms of Midwestern's offer "include not

10  only Midwestern's promotional representations about its disciplinary oversight of KRMC"

11  but also its practice of "promoting residents at the end of their postgraduate year." (Doc. 59

12  at 5.) He concedes in exchange for his residency placement he contributed not "tuition in

13  the traditional manner" but payments by Medicaid and Medicare. (Doc. 59 at 5.) And

14  although Dr. Clavo worked at the KRMC and already attended medical school, he

15  characterizes the relationship with Midwestern not as employment but as an educational

16  relationship akin to a university and student. (Doc. 59 at 7.)

17         Dr. Clavo has not plausibly alleged the existence of an implied contract because he

18  does not allege any bargained-for consideration. The complaint lacks any allegations

19  Dr. Clavo provided something to Midwestern in exchange for advancing residents "to the

20  next level," "foster[ing] a safe environment," or enforcing the Due Process Policy.

21  Dr. Clavo admits he did not render services to Midwestern as an employee but to KRMC.

22  (Doc. 53 at 6.) He did not pay tuition to Midwestern. Although Midwestern received funds

23  provided by the Center for Medicare and Medicaid Services as an ACGME-accredited

24  university, Dr. Clavo cannot state a claim on these grounds because he did not himself

25  provide any consideration. *See Castrillon v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 51

26  F. Supp. 3d 828, 842–43 (S.D. Ind. 2014) (holding medical resident had not identified a

27  contract for purposes of her breach-of-contract claim where she relied on ACGME due

28  process standards, which are "akin to regulations established by an administrative body,

- 4 -

rather than a contract governing the relationship between two entities"). In other words, there is no implied contract because Dr. Clavo has not alleged the essential element of consideration on his part. Nor has he alleged consideration on Midwestern's part, because its due process policy and descriptions on its website are "merely a description of [its] present policies" and do not create contracts. *Horodner v. Midwestern Univ.*, No. CV-20-01800-PHX-JAT, 2020 WL 7643198, at *5 (D. Ariz. Dec. 23, 2020) (quotations omitted). Dr. Clavo has not identified "any policy language that demonstrates Midwestern's promissory intent" to follow such policies in exchange for his performance. *Id.*

Separately, Dr. Clavo has not identified such a contract's material terms. It is not clear from the complaint what it means to "advance residents to the next [post-graduate year] level" or even how Midwestern was involved in that process. (Doc. 53 at 9.) The amended complaint does not identify the material terms of the alleged contract such that a breach of those terms might be identified. *See Horodner*, 2020 WL 7643198, at *5 ("It is elementary that for an enforceable contract to exist there must be . . . sufficient specification of terms so that the obligations involved can be ascertained.") (quotations omitted).

Because Dr. Clavo has not shown the existence of bargained-for-consideration or specified the alleged terms between the parties, he has not pleaded the elements of an implied contract with Midwestern. After receiving the opportunity to correct his prior deficiencies, Dr. Clavo still did not state a claim for relief. "[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Metzler Inv. GMBH v. Corinthian Colls., Inc*., 540 F.3d 1049, 1072 (9th Cir. 2008) (quotations omitted); *see also Robinson v. GE Money Bank*, No. 09-CV-00227-AWT, 2014 WL 12693835, at *2 (D. Ariz. Apr. 15, 2014) ("Plaintiffs have already had two opportunities to state a claim, and they need not be granted a third opportunity."). Dr. Clavo has now failed twice to state a breach-of-contract claim against Midwestern and the court will not provide him a third opportunity. His claim against Midwestern is now dismissed without leave to amend.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Accordingly,

**IT IS ORDERED** Midwestern's motion to dismiss (Doc. 58) is **GRANTED**. The claim against Midwestern is **DISMISSED WITHOUT LEAVE TO AMEND** and Midwestern is **DISMISSED** as a defendant.

Dated this 28th day of July, 2025.

**Honorable Krissa M. Lanham**
**United States District Judge**